UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LILLIAN PORTIA McGEE,           ) Case No. 1:17CV2645
                                     )
    Plaintiff,                  )
                                     ) JUDGE JOHN R. ADAMS
        v.                 ) MAGISTRATE JUDGE DAVID A. RUIZ
                                   )
COMMISSIONER OF SOCIAL     )
    SECURITY,                )
                                   )
    Defendant.             ) REPORT AND RECOMMENDATION

Plaintiff Lillian Portia McGee ("McGee" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On June 11, 2014, McGee filed an application for a POD and DIB, alleging disability beginning May 16, 2014.  (R. 9, Transcript ("tr."), at 10, 211-212, 235-246.)  McGee's application was denied initially and upon reconsideration.  (R. 9, tr., at 101-112, 113-125, 126-129, 136-137.)  Thereafter, McGee requested a hearing before an administrative law judge.  (R. 9, tr., at 145-146.)

An Administrative Law Judge ("the ALJ") held the hearing on October 26, 2016.  (R. 9, tr., at 48-100.)  McGee appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 50, 52-88.)  A vocational expert ("VE") also attended the hearing and provided testimony.  (*Id.* at 50, 88-97.)  On February 22, 2017, the ALJ found McGee was not disabled.  (R. 9, tr., at 10, 24.)  The Appeals Council denied McGee's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. 9, tr., at 1-3.)  On December 19, 2017, McGee filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.  McGee raises a single issue, asserting that the ALJ did not properly consider the medical opinion contained in physical therapist Anthony Plescia's functional capacity evaluation ("FCE").  (R. 12, PageID #: 1708.)

## II.  PERSONAL BACKGROUND INFORMATION

McGee was born on [redacted], 1962, and was 51 years old on the alleged disability onset date.  (R. 9, tr., at 211, 235.)  She completed two years of college and can communicate in English.  (R. 9, tr., at 238, 239.)  McGee had past relevant work as a training instructor.  (R. 9, tr., 24, 89.)

2

III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in McGee's brief alleging error by the ALJ.  As noted earlier, McGee applied for DIB benefits on June 11, 2014, alleging disability beginning May 16, 2014.  (R. 9, tr., at 10, 211-212.)  She listed her physical or mental conditions that limit her ability to work as:  cervical spinal stenosis, osteoarthritis, cervicalgia, and hypertension.  (R. 9, tr., at 238.)  Because McGee's claim focuses on a single physical therapist examination, only a brief summary of her medical history is provided.

On May 27, 2016, McGee had a follow-up appointment with rheumatologist Isam Diab, M.D.  (R. 9, tr., at 896-897.)  The patient reported that she was not doing well, with recurrent neck pain with some radiation to the left arm, some lower back pain, and aches and pain all over. *Id.* at 896.  Dr. Diab diagnosed cervical spondylosis with recurrent left radiculopathy lately, left shoulder and arm, and status post remote laminectomy, C6-C7.  *Id.*  Dr. Diab emphasized the importance of stretching and range of motion exercises, and he advised a follow-up with spine surgery. *Id.* at 897.

McGee presented to neurologist Dr. James S. Anderson on June 28, 2016, for assessment of neck and low back pain.  (R. 9, tr., at 887-891.)  Dr. Anderson diagnosed cervical spondylosis with myelopathy and ordered new X-rays and an MRI of the cervical spine. *Id.* at 889.  The doctor planned to refer McGee for aquatherapy.  *Id.*  Dr. Anderson also diagnosed lumbar

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

3

stenosis, but noted that a September 2015 lumbar MRI was unremarkable.  *Id.* at 890.  He

ordered a new X-ray of the lumbar spine due to a change in the patient's reported pain.  *Id.*

An MRI conducted on July 5, 2016, showed cervical spondylosis with central spinal

stenosis, heterogeneous enlargement of the thyroid, and T1 hypointense marrow at C5, probably

degenerative.  (R. 9, tr., at 1004-1005.)  At C6-C7, there were postoperative changes related to

an anterior cervical discectomy and fusion.  *Id.* at 1004; *see also id.* at 1007.  A lumbar spine X-

ray done that same day showed mild lower lumbar degenerative disc disease, without instability.

*Id.* at 1006.

Opinion Evidence

On March 4, 2015, state agency medical consultant Gerald Klyop, M.D., reviewed the

medical record and opined that McGee could occasionally lift or carry twenty pounds, and ten

pounds frequently. (R. 9, tr., at 107-108.)  Her ability to push or pull was otherwise unlimited.

*Id.* at 108.  She could stand or walk six hours of an eight-hour workday, and she could sit for six

hours of a workday.  *Id.*  The claimant had the following postural limitations:  McGee could

never climb ladders, ropes, or scaffolds.  *Id.*  She could occasionally climb stairs or ramps, stoop,

kneel, crouch, and crawl.  *Id.*  McGee could frequently balance.  *Id.*  McGee needs to avoid all

exposure to heights, hazards, or machinery. *Id.* at 109.

Dr. Klyop noted that McGee has degenerative changes of the spine, and in July 2014 she

underwent a cervical laminectomy, with some improvement in her symptoms.  (R. 9, tr., at 109.)

She has normal strength in all extremities and normal grip strength.  *Id.*  The doctor stated that

McGee has decreased range of motion ("ROM") in her neck, and tenderness in her lower back.

*Id.*  She has been diagnosed with fibromyalgia.  *Id.*  Dr. Klyop noted that her physical exams are

4

inconsistent; sometimes she is found to have full strength throughout, while at other times she is noted to have decreased strength in certain joints.  *Id.*  At times, she walks with a cane.  *Id.*  The doctor indicated that there was no medical or other opinion evidence in the record.  *Id.* at 107.

On April 15, 2015, McGee presented to Anthony Plescia, DPT, at Parmatown Physical Therapy for an FCE evaluation "associated with a work related injury of her cervical, lumbar and R shoulder occurring on 3-18-13."  (R. 9, tr., at 772.)  McGee reported pain in the lumbar spine and cervical spine, with right radicular symptoms and sciatica.  *Id.*  The therapist reported that range of motion and muscle strength in both legs was normal, with a slight deficit in her left leg that was not enough to affect function.  *Id.* at 774.  No neurologic symptoms were observed. *Id.* Testing of flexibility in her legs revealed tightness, significant enough to effect joint motion.  *Id.* Regarding abdominal strength, McGee was unable to rise to a seated position from a prone position without using her hands.  *Id.*

Mr. Plescia assessed McGee's manual dexterity (fine and gross manipulation) as within normal limits, and her grip strength was normal as well.  (R. 9, tr., at 775.)  The therapist stated her posture was poor, with kyphosis of the thoracic spine, and a hyperlordic back posture.  *Id.* Plescia noted that McGee walks without an assistive device and she was able to walk on a treadmill for eighteen minutes until she stopped the test reporting lower back pain.  *Id.*  She was able to climb stairs, ascending and descending twenty-four stairs, using the handrail.  *Id.* McGee performed a single-leg stance on each leg without losing balance.  *Id.* at 776. The FCE determined that McGee had the ability to frequently carry 10 pounds and to lift 15 pounds, and to push/pull 30 pounds ten times each.  *Id.* at 776-777.  She was able to carry 15 pounds for 100

5

feet one time.  *Id.* at 777.  McGee reported increased pain during the lift and carry tests, and during the pulling tests.  *Id.* at 776-777.

Although Plescia did not have McGee's job description, he concluded that McGee "does not have the physical ability to perform the essential job functions of her previous position."  (R. 9, tr., at 779.)  The therapist stated that her lifting ability, intolerance for prolonged positions, and lack of functional mobility are not sufficient for a manual labor position.  *Id.*  Plescia determined that McGee "falls under the category of TOTAL TEMPORARY DISABILITY at this time."  *Id.* (emphasis in original). He recommended further therapy, specifically a trial of aquatic therapy, and chronic pain management.  *Id.*  Plescia also stated that "I feel with continued effort a return to a light duty position is obtainable as a long-term goal," and he recommended vocational counseling.  *Id.*

On June 2, 2015, state agency medical consultant Bradley L. Lewis, M.D., reviewed the medical record on reconsideration and opined that McGee could occasionally lift or carry twenty pounds, and ten pounds frequently. (R. 9, tr., at 120.)  Her ability to push or pull was otherwise unlimited.  *Id.*  She could stand or walk six hours of an eight-hour workday, and sit for six hours of a workday.  *Id.*  McGee could occasionally climb ladders, ropes, or scaffolds, stoop, crouch, and crawl, and she could frequently climb stairs or ramps.  *Id.* at 120-121.  McGee had no limitations for kneeling, or for balancing.  *Id.*

Dr. Lewis opined that McGee was limited in her ability to reach due to cervical degenerative disc disease ("DDD"), and she could only occasionally reach overhead with either arm.  (R. 9, tr., at 121.)  The doctor noted that McGee alleged worsening of her lumbar stenosis condition on reconsideration.  *Id.*  An MRI of the lumbar spine in November 2014 showed mild

6

canal stenosis.  *Id.* at 122.  Dr. Lewis indicated that there was no medical or other opinion evidence in the record.  *Id.* at 120.

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her February 22, 2017, decision:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2.  The claimant has not engaged in substantial gainful activity since May 16, 2014, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3.  The claimant has the following severe impairments:  spine disorder; obesity; hypertension; and heart failure (20 C.F.R. 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can frequently climb ramps and stairs.  The claimant can occasionally stoop, crouch, and crawl.  The claimant can never climb ladders, ropes or scaffolds due to obesity.  The claimant would need to use a cane for ambulation.
>
> 6.  The claimant is capable of performing past relevant work as an Accounting Trainer.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).
>
> 7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2014, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 9, tr., at 12, 15, 23, 24.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)..  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

8

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Comm'r*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

McGee presents a single legal issue for the court's review: "The ALJ did not properly

consider the medical opinion contained in physical therapist Anthony Plesci[a]'s FCE [functional

capacity evaluation]."  (R. 12, PageID #: 1708.)  McGee argues that the ALJ's analysis

mischaracterized the FCE.  *Id.* at 1710-1712.

> The ALJ addressed the physical therapist's opinion as follows:
>
> After a functional capacity evaluation on April 15, 2015, Anthony Plescia, DPT,
> opined that the claimant does not have the physical ability to perform the essential
> job functions of her previous position.  It was opined that her lifting ability,
> intolerances for prolonged positions, and lack of functional motion are not
> sufficient for a manual labor position.  Though slightly deconditioned, it was
> opined that she could return to light work with continued effort.  Mr. Plescia
> opined that the claimant fell under the category of "total temporary disabled"
> (Exhibit 19F).  This opinion is accorded some weight as Mr. Plescia is not an
> acceptable medical source pursuant to SSR 06-03p but Mr. Plescia's opinion is
> consistent with the claimant's ability to carry 15 pounds and push/pull 30 pounds
> during her evaluation, which is consistent with light work.  The opinion with
> respect to "total temporary disabled" addresses an issue reserved to the
> Commissioner (SSR 96-5p), and this opinion is vague with no true function by
> function assessment of the claimant's abilities.

(R. 9, tr., at 21; *see also id.*, at 18.)

Mr. Plescia is a physical therapist, which is not an "acceptable medical source" under the

Social Security regulations; and, therefore, he cannot render a medical opinion.  *Kilburn v.*

*Comm'r*, No. 1:17CV603, 2018 WL 4693951, at *11 (S.D. Ohio Sept. 29, 2018); *Sisky v. Colvin*,

No. 5:15CV1208, 2016 WL 4418104, at *8 (N.D. Ohio Aug. 19, 2016); *see also* 20 C.F.R. §

404.1513(a); SSR 06-3p, 2006 WL 2329939, at *1.  SSR 06-3p discusses the importance of the

distinction between "acceptable medical sources" and other health care providers, as follows:

10

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable medical sources" can give us medical opinions. Third, only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight.

SSR 06-3p, 2006 WL 2329939, at *2 (internal citations omitted). Because a physical therapist is not considered an "acceptable medical source" under the regulations, an ALJ is not required to give any special deference to a physical therapist's report. *Kilburn*, 2018 WL 4693951, at *11 (citing *Nierzwick v. Comm'r*, 7 Fed. Appx. 358, 363 (6th Cir. 2001)); *Turner v. Colvin*, 2015 WL 5474081, at *5 (E.D. Ky. Sept. 16, 2015).

Although information from persons considered "other sources" such as a physical therapist cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment," and how it affects the individual's ability to function. SSR 06-3p, 2006 WL 2329939, at *2; *Cruse v. Comm'r*, 502 F.3d 532, 541 (6th Cir. 2007); *Reynolds v. Colvin*, No. 1:12CV2994, 2013 WL 5316578, at *7 (N.D. Ohio Sept. 23, 2013). Opinions from "other sources" who have seen the claimant in a professional capacity should be evaluated by considering how long the source has known the claimant, how consistent the source's opinion is with other evidence, and how well the source's opinion is explained. *Cruse*, 502 F.3d at 541; *Sisky*, 2016 WL 4418104, at *8. The regulations provide that the ALJ should explain the weight given to the other source's opinion. 20 C.F.R. § 1527(e)(2); *Cruse*, 502 F.3d at 541.

The ALJ explained that the decision gave "some weight" to Mr. Plescia's FCE because it was consistent with an ability to perform light work, but it was "vague with no true function by function assessment of the claimant's abilities." (R. 9, tr., at 21.) The ALJ noted that Plescia

11

conducted a single FCE on April 15, 2015, *id.*, which the court finds consistent with the medical

evidence outlined in the claimant's brief.  *See generally* R. 12, PageID #: 1692-1707 ("relevant

medical evidence" contains single mention of Plescia and the FCE, at 1705-1707.)  Thus, the

ALJ explained the weight given to Plescia's FCE, and properly evaluated it by considering how

long Plescia had known McGee (a single visit), how consistent the source's opinion was with

other evidence, and how well the source's opinion was explained ("vague with no true function

by function assessment").  *See, e.g.*, *Cruse*, 502 F.3d at 541; *Sisky*, 2016 WL 4418104, at \*8.

McGee, however, contends that "where a medical opinion contradicts the ALJ's RFC

finding, the ALJ must explain why she did not include its limitations" for the RFC to be

supported by substantial evidence.  (R. 12, PageID #: 1708, discussing SSR 96-8p, and citing

*Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011).)  But the reliance on *Fleischer*

and SSR 96-8p is misplaced because Plescia's FCE is not from an acceptable medical source and

it is not considered a medical source opinion.  The court, in *Fleischer*, found error because the

ALJ's decision did not address the RFC assessment from an acceptable medical source.

*Fleischer*, 774 F. Supp. 2d at 881.  Here, although a physical therapist is not considered an

"acceptable medical source," the ALJ still considered Plescia's FCE as information from an

"other source," as discussed above.  Moreover, SSR 96-8p provides that the ALJ's "RFC

assessment must always consider and address medical source opinions."  SSR 96-8P, 1996 WL

374184, at \*7.  Again, even though a physical therapist cannot provide such a medical opinion

(SSR 06-3p, 2006 WL 2329939, at \*2), the ALJ's decision addressed the FCE and gave it some

weight.  (R. 9, tr., at 21.)

12

McGee also argues that the ALJ erred by mischaracterizing many findings in the FCE. (R. 12, PageID #: 1710.)  The Commissioner responds that any inconsistencies McGee identified in the ALJ's decision do not alter that the RFC determination finding that McGee can perform light work with the specified limitations.  Moreover, the Commissioner asserts that substantial evidence supports the ALJ's decision.  (R. 14, PageID #: 1733-1736.)  The undersigned has considered McGee's assertions, but as discussed herein, they do not alter the court's finding that substantial evidence supports the ALJ's decision.

First, McGee points out the ALJ incorrectly stated that, during the FCE, McGee "sat up from a lying down position without the use of her hands" (R. 9, tr., at 18), while Plescia noted that "[s]he was unable to sit up without the use of his [*sic*] hands" (*id.*, at 774).  The Commissioner notes that nothing in the definition of light work specifies that an individual must have full abdominal strength.  (R. 14, PageID #: 1733, citing 20 C.F.R. § 1567(b).)  McGee further claims that the ALJ incorrectly stated that she was able to carry 15 pounds for 100 feet. (R. 12, PageID #: 1710.)  She acknowledges that she carried 10 pounds for 100 feet, but contends that she dropped the weight because of the pain when attempting to carry 15 pounds that distance.  *Id.*  But as the Commissioner points out (R. 14, PageID #: 1735), the FCE indicated, "patient observed dropping weights during her second attempt to carry 15 [pound] weight 100 feet" (R. 9, tr., at 777).  Thus, it was reasonable for the ALJ to conclude McGee was able to carry 15 pounds on her first attempt.  The Commissioner further contends that this interpretation was reasonable because McGee was also able to frequently lift 15 pounds from 36 to 49 inches.  (R. 14, PageID #: 1735, citing R. 9, tr., at 776.)

McGee also views the ALJ's statements that she was able to push/pull thirty pounds, and able to walk on a treadmill for eighteen minutes, as mischaracterizations because it did not mention that these activities resulted in an increase in pain.  (R. 12, PageID #: 1710, citing R. 9, tr., at 18, 21, 777-778.)  The claimant also states Plescia noted McGee "demonstrated [a] significant deconditioned state throughout the test," requiring several breaks to catch her breath, whereas the ALJ characterized her as "slightly deconditioned."  *Id.*, citing R. 9, tr., at 21, 779. McGee asserts the ALJ incorrectly stated that Plescia opined she could perform light work, whereas she contends the ALJ should have indicated that she could possibly return to light work in the future.  (R. 12, PageID #: 1710-1711, citing R. 9, tr., at 21.)  The record indicates the physical therapist recommended aquatic therapy, and then stated, "I feel with continued effort a return to a light duty position is obtainable as a long-term goal."  (R. 9, tr., at 779.)  In fact, the ALJ's decision contains a proper summary of Plescia's statement, indicating "it was opined that she could return to light work with continued effort."  (R. 9, tr., at 21.)

McGee also contends that the ALJ misapplied the requirements for a finding of light work and argues that the FCE, which identifies her ability to carry 15 pounds, "falls short of the 20 pound lift/carry requirement of light work."  (R. 12, PageID #: 1711.)  However, that contention misreads the regulation, which states: "Light work involves lifting <u>no more than 20 pounds at a time</u> with frequent lifting and carrying of objects weighing up to 10 pounds."  20 C.F.R. § 1567(b) (emphasis added).  In other words, lifting twenty pounds is the upper limit, not the minimum lift/carry requirement.  The ability to lift 15 pounds exceeds the limitation for sedentary work ("no more than 10 pounds," 20 C.F.R. § 1567(a)), and would fit within the

definition of light work.  Moreover, as noted below, the ALJ relied upon additional record evidence that McGee could carry twenty pounds occasionally and ten pounds frequently.

Plescia's FCE demonstrated that McGee was able to carry 15 pounds for 100 feet, and that she was able to frequently lift 15 pounds from 36 to 49 inches.  In addition, she was able to push/pull 30 pounds ten times.  (R. 9, tr., at 776-777.)  The ALJ's decision that McGee can perform light work also relied upon Dr. Klyop and Dr. Lewis who both opined that McGee could lift or carry twenty pounds occasionally, and ten pounds frequently.  (R. 9, tr., at 107-108, 120.) The physical therapist's FCE is entitled to less weight than the consulting physicians' opinions because a physical therapist is not an "acceptable medical source."  *See, e.g.*, *Meuzelaar v. Comm'r*, No. 15-2341, 2016 WL 2849305, at \*2 (6th Cir. 2016).

Although there is some evidence in the record that supports McGee's claim, the ALJ's determination that she can perform light work is supported by substantial evidence in the record. *Watts v. Comm'r*, No. 05-6237, 2006 WL 1208065, at \*4 (6th Cir. May 1, 2006) (medical reviewers' reports provide substantial evidence); *Woodall v. Berryhill*, No. 1:17CV1289, 2018 WL 3133442, at \*10 (N.D. Ohio June 11, 2018), *adopted by* 2018 WL 3126552 (N.D. Ohio June 26, 2018) (agency consultative opinions may constitute substantial evidence, citing cases).

## VIII.  CONCLUSION

The record evidence as discussed in the ALJ's decision constitutes substantial evidence to support the Commissioner's final benefits determination.  The court further finds that the ALJ's decision concerning the weight given to Mr. Plescia's evaluation is supported by substantial

evidence, as is the ALJ's RFC determination.  Therefore, the undersigned recommends that the

decision of the Commissioner be affirmed for the aforementioned reasons.


                                    s/ David A. Ruiz
                                    David A. Ruiz
                                    United States Magistrate Judge


Date:   November 26, 2018

                               OBJECTIONS

        Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the
specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See
Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir.
1981).